IN THE UNITED STATES DISTRICT FOR THE MIDDLE DISTRICT
FOR MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSANNNA STEPHENS,<br>    Plaintiff,<br><br>v.<br><br>SOPAPILLAS, LLC, and<br>STEVEN J. DALE,<br>    Defendants | COLLECTIVE ACTION<br><br><br>CASE NO. _____<br><br>JURY DEMAND |

**COLLECTIVE ACTION COMPLAINT PURSUANT TO THE FAIR STANDARDS ACT**

Plaintiff Susanna Stephens (hereinafter "Stephens," "Plaintiff,") files this Collective Action Compliant pursuant to 29 U.S.C. §216(b), on behalf of herself and all other similarly situated employees, against Defendants Steven J. Dale (hereinafter "Defendant Dale" or "Dale") and Sopapillas, LLC (hereinafter "Sopapillas") (hereinafter collectively, the "Defendants") to remedy violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq*. (hereinafter "FLSA" or the "Act").

### I.    JURISDICTION AND PARTIES

1. Plaintiff brings this action, on behalf of herself and all other similarly situated employees of Defendants, pursuant to the FLSA's collective action provision found at 29 U.S.C § 216(b). Pursuant to 29 U.S.C. §216(b) Plaintiff is filing her written consent in writing to become such a party. (**Exhibit A – Susanna Stephens Consent**).

2. Plaintiff seeks to recover unpaid (or underpaid) minimum and overtime wages, an equal amount of liquidated damages, costs, attorneys' fees, and all other legal or equitable relief to which she and other similar situated employees who join this action are entitled.

1

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Venue is proper in the Middle District of Tennessee, pursuant to 28 U.S.C. §1391(b).

4. Each of the Defendants are subject to personal jurisdiction in the State of Tennessee for the purpose of this lawsuit.

5. Defendant Dale is the owner and operator of Sopapillas restaurant.

6. Plaintiff resides in Franklin, Tennessee, and has been employed by Defendants from approximately February 2017 through the present.

7. At times material to this action Plaintiff, and all other situated employees, were "employees" of Defendants as defined by §203(e)(1) of the FLSA and worked for Defendants within three years preceding the filing of the instant action.

8. At all times material to this action, Defendants each were and are an "employer," as defined by § 203(d) of the FLSA, of the Plaintiff and all other similarly situated employees who worked at Sopapillas

9. The minimum wage and overtime provisions of the FLSA, set forth in 29 U.S.C. §206 and 207, respectively, apply to Defendants, Plaintiff, and all those similarly situated to Plaintiff.

10. At all times material to this action, Defendants were an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA and had an annual gross volume of sales which exceeds $500,000.00.

11. Plaintiff and all other similarly situated employees employed by Defendants were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendants.

2

12. The interstate commercial activity includes, among other things, the selling of food and beverages to patrons who travel in interstate commerce, serving food that originates out of state, and processing credit card transactions that cross state lines.

## II. FACTUAL BACKGROUND

13. Defendant Dale owns and operates the restaurant Sopapillas located in Franklin, Tennessee personally and through Defendant Sopapillas, LLC.

14. Defendant Dale manages, owns, and controls the operation of Sopapillas, directly and indirectly through his supervision of management and hourly employees.

15. Defendants for at least three years prior to filing this lawsuit have had a uniform policy, and practice of paying employees in various positions a sub-minimum wage while claiming a tip credit.

16. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of failing to notify employees of the requirements of the tip credit in violation of 29 U.S.C. §203(m).

17. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of claiming a tip credit against the minimum wage and overtime obligations for Named Plaintiff, and all other similarly situated employees.

18. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of mandating employees working as servers and bartenders to pay a portion of tips they receive from customers to the restaurant at the end of their shifts to supplement the hourly wages of employees working in positions that do not qualify as tipped employees under the FLSA.

19. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of employing servers in various other jobs that are non-tipped positions and claiming a tip credit for hours worked in those positions.

20. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of paying employees a sub-minimum wage and claiming a tip credit as part of an illegal tip sharing scheme.

21. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of requiring, suffering or permitting employees to spend more than 20% of their work time performing non-tip producing work while Defendants improperly claimed a tip credit for those hours.

22. For at least three years prior to the filing of this lawsuit, Defendants have had a uniform policy and practice of requiring, suffering, or permitting Plaintiff and all other similarly situated employees to perform compensable work even though Defendants failed to record or compensate the employees for these "off the clock" work hours.

23. Defendants employ individuals to fill various positions, including, but not limited to: server; host/hostess; server assistant/busser; food expeditor; and bartender.

24. Defendants claim a tip credit against their wage obligations for individuals employed in the server position.

25. Defendants claim a tip credit against their wage obligations for individuals employed in the hostess position.

26. Defendants claim a tip credit against their wage obligations for individuals employed in the server assistant/busser position (hereinafter "busser").

4

27. Defendants claim a tip credit against their wage obligations for individuals employed in the food expeditor position (hereinafter "food expo").

28. Defendants claim a tip credit against their wage obligations for individuals employed in the bartender position.

29. Defendants did not provide Plaintiff, and other similarly situated employees, for whom Defendants claimed a tip credit, of the prerequisites of the FLSA §203(m) tip credit.

30. Specifically, Defendants did not inform tip credit employees:

   a. the maximum tip credit is $5.12 per hour;

   b. the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped employee;

   c. that all tips received are to be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and,

   d. that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

31. Plaintiff is employed by Defendants and has been assigned to work as a server, hostess, and food expo.

32. The servers work in front of the restaurant greeting customers, taking orders, serving food and drinks, processing payments and performing other tasks assigned by the Defendants.

33. The hosts/hostesses work in front of the restaurant greeting customers, monitoring the open dining sections of the restaurant for empty and cleaned tables, estimating wait times for

5

guests, and escorting patrons to available tables and performing other related tasks assigned by the Defendants.

34. The busser works in between the front and back of house of the restaurant, cleaning off all plate and glassware from tables that have left, resetting the table, ensuring the tables are set properly and clean, and transporting all dishware to the kitchen and performing other related tasks assigned by the Defendants.

35. The food expo inspects food orders from the kitchen staff, garnishes plates, adds sides, assembles to-go orders, and delegates to servers and bussers the delivery of food to customers and performs other related tasks as assigned by the Defendants.

36. The bartender works in front of the restaurant taking food and drink orders, serving food and drinks, processing payments and performing other tasks assigned by the Defendants.

37. Defendants paid Plaintiff, and similarly situated individuals, a subminimum wage and claimed a tip credit when they worked as a server, hostess, and food expo.

38. When Plaintiff and similarly situated employees worked as servers, they did not retain all their tips pursuant to Defendants' mandatory tip out policy, practice, and procedure.

39. Plaintiff and similarly situated servers were required to generate a check-out report that provided information related to the customers transactions they completed during their shift.

40. Plaintiff and similarly situated employees were required to submit their check-out reports to management at the end of each shift.

41. Defendants' check out report provides the amount employees who receive cash tips from customers are required to remit to restaurant management.

6

42. The sales report included the line items, bartender tips; and bus/host tips.

43. Plaintiff and similarly situated employees were required to go through the "tip out" process, remitting a portion of their cash tips based on food and beverage sales.

44. Defendants use servers' tip money to pay hostesses, bussers, and food expos half the agreed upon hourly rate for those positions at the end of each shift.

45. Defendants required employees to pay cash out of pocket, when they did not have sufficient cash from tips, the mandatory tip out, to cover computer glitches and other events which reduced servers' wages to below minimum wage.

46. Defendants retained tip out amounts that exceed the agreed upon hourly rate for Defendants' hostesses, bussers, and food expos on those shifts.

47. Defendants used tipped employees' tip out contributions for impermissible purposes.

48. Defendants misused the servers' tip out cash to place themselves in a superior financial position.

49. Defendants misused the servers' tip out to subsidize their wage obligations for employees working in positions that do not qualify as tipped employees under the FLSA.

50. Defendants used employees' tip out money to pay food expos.

51. The food expo is a non-tipped occupation that Defendants are required to pay a direct hourly wage at least or in excess of the mandated federally mandated minimum wage or appropriate overtime rate.

52. Defendants scheduled Plaintiff, and similarly situated employees, to work as server, hostess or food expo for the entire shift.

53. When Plaintiff and similarly situated employees were assigned to work as food expos, they worked as food expos that entire shift.

54. When Plaintiff, and similarly situated employees, were assigned to the food expo position they did not customarily or regularly receive tips from diners.

55. When Plaintiff, and similarly situated employees, were assigned to the food expo position they did not customarily or regularly interact directly with diners.

56. When Plaintiff, and similarly situated employees, were assigned to the food expo they performed their job duties in the kitchen area in an area commonly referred to as the pass-through window, an area prohibited to diners.

57. When Plaintiff, and similarly situated employees, were assigned to the food expo position they did not perform any job duties in the dining area.

58. Employees assigned to the food expo position are required to do the food expo job duties, which do not include interacting with customers

59. Plaintiff never received $30.00 in tips a month directly from diners when working in the food expo position.

60. The food expo performs job duties traditionally classified as food preparation or kitchen support work.

61. The food expo's job duties do not include serving customers, as they are back of house employees.

62. When Plaintiff worked in the food expo position she received half the established hourly rate for the food expo position in cash at the end of her shift from the restaurant.

63. When Plaintiff worked in the hostess position she received half the established hourly rate for the hostess position in cash at the end of her shift from the restaurant.

8

64. When Plaintiff received her pay checks she received half the regular established hourly rate for hostess position.

65. When Plaintiff received her pay checks she received half the regular established hourly rate for the food expo position.

66. Defendants did not make up the difference when an employee's tips combined with the employer's direct wage did not equal at least the minimum hourly wage liability for a workweek.

67. Defendants did not make up the difference when an employee's tips combined with the employer's direct wage did not equal at least Defendants' overtime liability for a workweek.

68. Defendants did not have a legal tip sharing arrangement because they failed to inform Plaintiff, and similarly situated servers of the requirements of FLSA 3(m).

69. Defendants did not have a legal tip sharing arrangement because they included food expos who did not and do not qualify as tipped employees under the FLSA.

70. Defendants illegally claimed a tip credit for all employees for whom they claimed a tip credit.

71. Defendants illegally claimed a tip credit for all employees for whom they collected cash tips from in furtherance of Defendants tip out policy, practice, and procedure.

72. Defendants illegally claimed a tip credit for all employees for whom they claimed were part of Defendants' tip pool.

73. Employees were required to arrive before and stay after the restaurant permitted new diners.

74. "Defendants' Off Hours" refers to time before and after the restaurant is open to new diners.

75. "Pre-customer time" refers to time after the restaurant opens to the public and before the server has their first customer seated in their section or area.

76. "Post-customer time" refers to time after the server has finished serving the last customer seated in their section.

77. Plaintiff, and all similarly situated employees, spent substantial time performing job duties during Defendants' Off Hours.

78. Plaintiff, and all similarly situated employees, were required to arrive before the restaurant opened their doors to the public if assigned to day shift.

79. Plaintiff, and similarly situated employees, when working the day shift performed job duties including, but not limited to:

   a. brewing tea;

   b. turning on the chip warmer;

   c. boiling water;

   d. opening bags of refried beans;

   e. opening bags of queso;

   f. taking garnishes out of the fridge;

   g. preparing ice bathes for the six types of garnishes;

   h. preparing ice bath for salsa;

   i. cutting lemons and limes;

   j. restocking the guacamole fridge;

   k. taking chairs off the tables;

10

  l. crumbling cheese;

  m. wiping down all the tables;

  n. setting table place settings;

  o. placing electronic candle lights on each table;

  p. putting mats out;

  q. filling urns and pitchers with sweet tea, unsweetened teas and water;

  r. placing signs out on the sidewalk;

  s. folding napkins;

  t. brewing coffee, including decaf;

80. Plaintiff, and all similarly situated employees, scheduled for the day shift continued performing job duties during their pre-customer time.

81. Plaintiff, and all similarly situated employees, scheduled for the day shift during their post-customer time continued performing job duties including but not limited cleaning, rolling silverware, restocking, and other tasks.

82. Plaintiff, and all similarly situated employees, scheduled for the night shift were required to arrive, and during their pre-customer time, perform job duties including but not limited to: brewing tea and coffee; restocking chips, salsa, garnishes, and ice; and performing other tasks.

83. Plaintiff, and similarly situated employees, working the dinner shift spent post-customer time (that ran into Defendants' Off Hours) performing job duties including but not limited to: sweeping floors, wiping down tables and chairs, removing electronic candles, rolling silverware (up to 70 sets per server); transporting and stowing food and beverages; and performing other tasks.

84. Defendants claimed a tip credit for time spent by Plaintiff, and similarly situated employees, cleaning the restaurant's baseboards with toothbrushes.

85. Defendants claimed a tip credit against their wage obligations for time spent by Named Plaintiff, and similarly situated employees, attending mandatory meetings.

86. A manager regularly claimed a portion of the tip pool by claiming she worked as a hostess.

87. Defendants could have recorded the amount of time Plaintiff, and similarly situated employees, spent working during Defendants' off hours including, pre- and post-customer serving times.

88. The amount of time Plaintiff, and similarly situated employees, spent performing non-tip generating work during pre- and post-customer serving, combined with their off hours, exceeded twenty percent (20%) of their weekly work time.

89. Defendants claimed a tip credit for hours worked by Plaintiff, and all similarly situated employees, even when their pre- and post- customer time (including off hours) exceeded twenty percent (20%) of their weekly work time.

90. Defendants' claimed a tip credit against their wage obligations to Plaintiff, and all similarly situated employees, for time spent working when there were no customers in the restaurant to tip employees.

91. For at least three years prior to the filing of this complaint, Defendants have had the uniform policy and practice of requiring, suffering, or permitting off the clock work by not recording all hours worked by Plaintiff, and all other similarly situated employees.

92. Defendants violated the FLSA by failing to record and compensate employees for all hours worked.

## II. FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

93. Upon information and belief, Defendants have intentionally failed and/or refused to pay the putative class members, including Plaintiff, according to the provisions of the FLSA.

94. Defendants' actions in failing to compensate Plaintiff, as well as those similarly situated, in accordance with the provisions of the FLSA were willful so that a three-year statute of limitations should apply to this action.

95. Defendants' policies and practices described herein violate the minimum wage, overtime and tip credit provisions of the FLSA.

96. Defendants' policies and practices related to the tips and wages of the Plaintiff and all other similarly situated employees disqualify them from claiming the tip credit provisions of the FLSA such that Defendants must pay to its employees the full minimum wage for all hours worked under forty.

97. Defendants' failure to record and pay for all hours worked by Plaintiff and all other similarly employees, violates the minimum wage and overtime provisions of the FLSA and Defendants must pay their employees at least $7.25 per hour for every straight time hour unrecorded and unpaid and at least time and a half the regular rate of pay for all overtime hours unrecorded and unpaid.

98. Defendants improperly claimed a tip credit for duties not related to Plaintiff's and the putative class members' tipped duties, such as janitorial work. Such duties should have been compensated at the full minimum wage regardless of the amount of time spent performing these duties.

99. Defendants knew or should have known that putative class members performed work for which they were not compensated or not properly compensated.

100. There are numerous similarly situated employees of Defendants – specifically, all employees for whom Defendants have claimed a tip credit at any time since March 20, 2015 – who have been improperly compensated in violation of the FLSA. These employees would benefit from the issuance of Court-Supervised Notice of and the opportunity to join this lawsuit. These similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. Timely notice would benefit these workers and the public interest in ensuring compliance with the FLSA. Therefore, this could should approve notice to the putative class.

## IV. PRAYER FOR RELIEF

WHEREFORE, premises considered, the named, represented Plaintiff, individually, and on behalf of all other similarly situated persons, pursuant to 29 U.S.C. § 216(b), prays for the following relief:

1. that process issue against Defendants and that the Defendants be required to answer within the time period provided by applicable law;

2. that the Court order that Plaintiff may issue notice to all similarly situated persons;

3. that other similarly situated past or present employees be given the opportunity to join in this lawsuit as party-plaintiffs by filing written consents pursuant to 29 U.S.C. § 216(b);

4. that Plaintiff, and all others who file consents, be awarded damages in the amount of their unpaid wages, and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), and/or prejudgment interest;

5. that Defendants be required to pay Plaintiff's attorneys' fees;

6. that Defendants be required to pay the costs and expenses of this action;

14

7. that Plaintiff and all others who join this action be granted such other, further and general relief to which they may show themselves entitled; and,

8. that a jury be impaneled to hear this cause of action at trial.

## VI. JURY DEMAND

THE PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted,

/s/ Charles P. Yezbak, III
Charles P. Yezbak, III (TN Bar No. 1965)
Daniel E. Arciniegas (TN Bar No. 035853)
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Telephone: 615-250-2000
Fax: 615-250-2020
yezbak@yezbaklaw.com
Counsel for Plaintiff