IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSANNA STEPHENS, | ) |
| | ) |
| Plaintiff, | ) NO. 3:18-cv-00296 |
| | ) |
| v. | ) JUDGE RICHARDSON |
| | ) |
| SOPAPILLAS, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is Plaintiff's Motion for Expedited Court Supervised Notice to the Putative Class and for Conditional Certification pursuant to the Fair Labor Standards Act. (Doc. No. 16). Defendants oppose the motion. (Doc. No. 24; Doc. No. 26). For the reasons discussed below, Plaintiff's motion (Doc. No. 16) will be **GRANTED**.

## BACKGROUND

On March 20, 2018, Plaintiff commenced this collective action against her former employer Sopapillas, LLC ("Sopapillas") and Steven J. Dale (together, "Defendants"), pursuant to the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of herself and all others similarly situated to her. (Doc. No. 1 ¶ 1). According to Plaintiff, Sopapillas is a restaurant in Franklin, Tennessee, and is owned and operated by Steven J. Dale. (*Id.* ¶¶ 13-14). Plaintiff alleges that Defendants' policies and practices violate the minimum wage, overtime and tip credit provisions of the FLSA. (*Id.* ¶¶ 93-99). Specifically, Plaintiff alleges that Defendants failed to record and pay for all hours worked by Plaintiff and other similarly situated employees, in violation of the minimum wage and overtime provisions of the FLSA. (*Id.* at ¶¶ 22,

97). Plaintiff also alleges that Defendants improperly claimed a tip credit for duties not related to Plaintiff's and the putative class members' tipped duties even though more than 20% of employees' hours were spent on non-tipped duties; mandated employees working as servers and bartenders to pay a portion of tips they received from customers at the end of their shifts to supplement the hourly wages of employees working in positions that do not qualify as tipped employees under the FLSA;[1] and still claimed a tip credit for the hours servers worked in non-tipped positions, such as the food expeditor position. (*Id*. at ¶¶ 18-20, 98).

On June 22, 2018, Plaintiff filed a Motion for Expedited Court Supervised Notice to the Putative Class and for Conditional Certification pursuant to the FLSA. (Doc. No. 16). Plaintiff seeks to issue the following notice to the putative class:

> **All individuals who worked for Defendants for whom Defendants claims a tip credit against their minimum wage and/or overtime obligations during any workweek within the last three years.**

(Doc. No. 17 at 2). Plaintiff ask the Court to: (1) order Defendants to provide her with putative class information, including each putative class members' full name, current or last known email address(es); current or last known home and mobile telephone number(s); dates of employment; and positions worked; (2) allow Plaintiff to issue opt-in notice and consent forms to the putative class members via email and U.S. mail; (3) order Defendants to provide an opt-in notice to the putative class members currently employed by Defendants with their paychecks throughout the notice period; (4) prevent Defendants and their agents from communicating with the putative class members about the subject of this lawsuit; and (5) allow putative class members to join the case by returning to Plaintiff's counsel a Consent form no later than 100 days following the date Defendants provide Plaintiff's counsel with the putative class information. (*Id*. at 3).

---

[1] This process is known as a "tip-out," and the pooling of these tips from multiple servers is known as a "tip-pool."

Defendants oppose the motion to certify and have filed six declarations from various employees in support. (Doc. No. 24). Defendants also raise several objections to Plaintiff's proposed notice language and procedures. (Doc. No. 26).

**LEGAL STANDARD**

The FLSA provides that a collective action may be maintained against any employer by one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Because the FLSA requires only that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009) (abrogated on unrelated grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)). Also, unlike class actions under Federal Rule of Civil Procedure 23, FLSA collective actions require similarly-situated employees to "opt-in" as plaintiffs. 29 U.S.C. § 216(b).

Although the FLSA does not define the term "similarly situated," the Sixth Circuit has noted that courts have considered the "'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n.65 (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. Employees may also be similarly situated if their claims are merely "unified by common theories

3

of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required." *Id.* at 584.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (internal quotation marks and citation omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D. Tenn. Nov. 29, 2010). Conditional certification need only be based on a modest factual showing, and district courts should use a fairly lenient standard that typically results in certification. *Comer*, 454 F.3d at 547. At the first stage, the court does not resolve factual disputes, decide substantive issues related to the merits of the case, or make credibility determinations. *Roberts v. Corrections Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. June 25, 2015).

"[T]he certification is conditional and by no means final." *Comer*, 454 F.3d at 546. After discovery, the defendant may move for decertification of the conditional class, which triggers the second phase of the court's review. *See O'Brien*, 575 F.3d at 583. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## ANALYSIS

### I. Conditional Class Certification

Plaintiff's motion involves this first or "notice" stage and seeks only conditional, not final, certification. Therefore, as described above, Plaintiff's burden at this stage is to demonstrate that she is similarly situated to other employees—a burden that can be satisfied with even a "modest factual showing." *Comer*, 454 F.3d at 547. In support of her motion to certify, Plaintiff submitted her own declaration (Doc. No. 17-1), the declaration of another employee (Doc. No. 17-2), and Plaintiff's payroll records from two pay periods. (Doc. No. 17-5; Doc. No. 17-6). Plaintiff maintains that this evidence meets the "fairly lenient" standard that typically results in certification. *Comer*, 454 F.3d at 547.

In Plaintiff's declaration, she indicates that she was employed at Sopapillas and worked as a server, food expeditor, and hostess. (Doc. No. 17-1 at ¶¶ 1-2). When working as a server she was required to give a portion of her cash tips to Sopapillas' management pursuant to a mandatory tip out process. (*Id*. at ¶¶ 5-6, 12). Her tip out was then distributed to other staff members including food expeditors, bussers, and hostesses. (*Id*.). When working as a food expeditor, she received tip money obtained by Sopapillas' management from other tipped employees, but did not earn any tips herself while working in this position. (*Id*. at ¶¶ 4, 7-8). She was also required to arrive before work, and stay after work, to perform duties in which she was compensated for at a rate less than minimum wage. (*Id*. at ¶¶ 9-11). She further alleges that these practices were Defendants' "common policies and practices and other employees complained about them during [her] employment." (*Id*. at ¶ 15).

In Jonathan Stephens' declaration, he indicates that he was employed at Sopapillas and worked as a server. (Doc. No. 17-2 at ¶¶ 1-2). Mr. Stephens was required to participate in the same mandatory tip out process described above by Plaintiff. (*Id*. at ¶¶ 2-4, 9). He was required to

perform opening duties before the restaurant opened and required to stay at the restaurant to perform closing duties after serving his last customer. (*Id*. at ¶¶ 6-8). Yet, Defendants paid him less than minimum wage for the work he did before and after serving customers. (*Id*.). Mr. Stephens also averred that Defendants "used common policies and practices and other employees complained about [these policies and practices] during [his] employment." (*Id*. at ¶ 12).

The Court finds that Plaintiff has made the required factual showing that she is similarly situated to potential class members. Defendants contend that the two declarations are insufficient to satisfy Plaintiff's burden of showing that employees in the class are similarly situated. The Court disagrees. *See Young v. Hobbs Trucking Co., Inc.*, No. 3:15-CV-991, 2016 WL 3079027, at *3 (M.D. Tenn. June 1, 2016) (granting conditional class certification where the plaintiff submitted his own affidavit and payroll records); *Lee v. Gab Telecom, Inc.*, No. 12-CV-14104, 2013 WL 1632552, at *3 (E.D. Mich. Apr. 16, 2013) (granting conditional certification where the named plaintiffs submitted only their affidavits in support); *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *5 (M.D. Tenn. Apr. 10, 2008) ("The Amended Complaint, coupled with the [the plaintiff's] declaration provide a 'modest showing'" that employees were similarly situated.).[2] Even though the two declarations discuss each employees' individual experiences, both

---

[2] As to Plaintiff's FLSA claim involving off-the-clock work, Defendants argue that Mr. Stephen's declaration does not discuss any off-the-clock work, leaving just a single declaration discussing off-the-clock work. This declaration fails to meet Plaintiff's burden because "courts throughout the Sixth Circuit have held that a single affidavit is not enough to demonstrate that employees were similarly situated." (Doc. No. 24 at 6). Yet, Defendants cite only a single case in support: *Swinney v. Amcomm Telecomm., Inc.*, No. 12-12925, 2013 WL 28063, at *8-9 (E.D. Mich. Jan. 2, 2013) (holding that the plaintiff's sole declaration, which contained conclusory allegations, was not sufficient to satisfy his burden to show the existence of others similarly situated). The Court finds *Swinney* distinguishable. In *Sweeny*, the declarant neither averred that the defendant's policies and procedures were applied to any other employee, nor mentioned the experiences of other employees. 2013 WL 28063 at *7. Unlike in *Swinney*, here, Plaintiff avowed personal knowledge that Defendants' policies also applied to all other employees. (Doc. No. 17-1 ¶ 15); *see also Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-110, 2019 WL 101905, at *3 (S.D. Ohio Jan. 4, 2019) (allowing conditional certification based on one declaration). Also, at the conditional certification stage, a plaintiff can demonstrate that "potential class members [are] 'similarly situated,' for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices." *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996)). Plaintiff's Complaint contains just that.

declarations state that Defendants have uniform practices and policies that apply to Sopapillas' other employees and that other employees complain of the same practices that both Declarants describe. (Doc. No. 17-1 at ¶ 15; Doc. No. 17-2 at ¶ 12). Additionally, Steven Dale's deposition testimony, given after Plaintiff's initial motion was filed, further convinces the Court that Plaintiff is similarly situated to the putative class. Mr. Dale testified that to his knowledge, Plaintiff was paid in the same way as all other Sopapillas' employees, all Sopapillas' employees participate in the tip pool, and all Sopapillas' employees operate under the same procedures and policies. (Doc. No. 55-1 at 6-16 (Dep. 135:5-136:6, 143:23-144:4, 145:23-152:7)).

The allegations in the Complaint, the sworn affidavits of Plaintiff and Mr. Stephens, and Mr. Dale's deposition testimony are sufficient under this stage's "fairly lenient" standard to show that Plaintiff is similarly situated to other putative class members because they "suffer from a single FLSA-violating policy." *See Comer*, 454 F.3d at 547 (internal quotations omitted); *O'Brien*, 575 F.3d at 585. The claims by Plaintiff and the putative class members would indeed be "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. The Court therefore finds that conditional certification of the proposed class is appropriate. Defendants may file a motion for decertification at a later date if discovery reveals that the members of the putative class are not similarly situated.

Much of Defendants' response attacks the merits of Plaintiff's FLSA claims, contending that Plaintiff has not alleged a factually supported or accurately described FLSA violation with respect to the tip pool or off-the-clock work. (Doc. No. 24 at 8). As to Plaintiff's FLSA claims involving the tip pool, Defendants argue that each of their servers tips out a predetermined percentage of his or her food sales (1% at lunch and 3% at dinner)—meaning, according to

Defendants, that its tip pool is not in violation of the FLSA, because the presence of an on-duty food expeditor does not affect the amount the server tips out.[3] (*Id.* at 2-5). As to Plaintiff's claim involving off-the-clock work, Defendants argue that Plaintiff does not allege Defendants were actually or constructively aware of her off-the-clock work. (*Id*. at 6).

When ruling on a motion for conditional certification under the FLSA, a federal court "'does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018) (quoting *Roberts*, 2015 WL 3905088, at *35). An abundance of authority supports this proposition. *See Roberts*, 2015 WL 3905088 at *13 (explaining that the defendant's substantive arguments were premature at the conditional class certification stage); *Bearden v. AAA Auto. Club S., Inc.*, No. 2:11-cv-03104-JTF-dkv, 2013 WL 1181474, at *6 (W.D. Tenn. Mar. 18, 2013) ("[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated."); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (finding that Applebee's arguments as to validity of plaintiffs' claims, even if ultimately meritorious, did not preclude conditional certification); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (stating that, at the notice stage, the court "need not evaluate the merits of plaintiffs' claims" to be able to determine that a group is similarly situated). While Plaintiff does need to make a modest factual showing, she need show only that other potential plaintiffs are similarly situated with respect to the alleged FLSA violation. Therefore, as Plaintiff contends, the

---

[3] Defendants do not cite to any legal authority supporting its argument that the tip pool is compliant with the FLSA because the amount the servers tip out does not change if a food expeditor is on duty. The Court, in fact, found authority supporting the contrary. *See Bourne v. Ansara Rest. Grp., Inc.*, No. 16-10332, 2016 WL 7405804, at *2 (E.D. Mich. Dec. 22, 2016) (noting the issue of whether certain employees who received the shared tips—known as "food expediters"—could participate lawfully in such a program was a "meritorious issue").

only relevant inquiry at this stage is whether Plaintiff has made this modest showing, and the Court concludes that she has.[4]

**II.      Objections to Plaintiff's Proposed Notice and Methods of Distribution**

Although a plaintiff in an FLSA action is not required to affirmatively seek the district court's approval in sending out notices, a district court may exercise its broad discretion under FLSA to facilitate notice to potential collective action plaintiffs. *See Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169 (1989); *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 185 n. 6 (M.D. Pa. 2008) ("District courts, however, have discretion to 'facilitat[e] notice to potential plaintiffs' of the pending collective action.") (citation omitted)). The Supreme Court has explained that "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman–LaRoche*, 493 U.S. 165 at 172.

Defendants argue that even if Plaintiff is entitled to conditional certification, the proposed notice form Plaintiff submits is deficient in several ways. Specifically, Defendants assert that: (1) the notice should, but does not, inform putative class members that they may be liable for Defendants' costs; (2) the notice should, but does not, advise putative class members that they have the right to obtain their own counsel; and (3) the word "illegal" should be removed in the description of Defendants' practices. Additionally, Defendants argue that Plaintiff's request for disclosure of the putative class members' email addresses and phone numbers should be denied and that distribution of the notice by email and with regularly scheduled paychecks should be prohibited. The Court addresses each of Defendants' concerns below.

---

[4] Defendants filed six declarations in support of its opposition to Plaintiff's motion. The declarations primarily support Defendants' merits argument, which the Court indicated above is premature at this time. In any event, Defendants' declarations like these (known colloquially as "happy camper" declarations because the declarations are often from cherry-picked former or current employees) "are routinely given little or no weight at the conditional certification stage." *Crosby*, 348 F. Supp. 3d at 749. Thus, Defendants' declarations fail to advance Defendants' cause on the issue currently before the Court.

*1. Liability for Costs*

Defendants contend that the notice should advise potential opt-in plaintiffs that there is a possibility they may be responsible for Defendants' cost if the claim is unsuccessful. (Doc. No. 26 at 2). Defendants argue that without the notice, Defendants could be "significantly prejudiced" in its attempt to recover court approved costs. (*Id.*).[5]

In reply, Plaintiff argues that including such language is unnecessary because the prospect that opt-in plaintiffs will be liable for cost is "speculative at best" because the FLSA authorizes awards of costs for plaintiffs, but not defendants. *See* 29 U.S.C. § 216(b). Although section 216(b) addresses only an award of costs to a prevailing plaintiff, the Sixth Circuit has held that defendants in FLSA are capable of recovering costs of actions because "neither section 216(b), nor any other provision of the FLSA precludes an award of costs to a prevailing defendant[.]" *Frye v. Baptist Mem'l Hosp., Inc.*, 507 F. App'x 506, 508 (6th Cir. 2012); *cf. Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) (noting the FLSA distinguishes between litigation costs and attorney fees, and denying employer's request for attorney fees as outside the FLSA's fee-shifting provision). Accordingly, the Court disagrees with Plaintiff that Defendants could not *potentially* recover their costs associated with defending the action. *See White v. Baptist Mem'l Healthcare Corp.*, No. 08-2478, 2012 WL 3776918, at *2-3 (W.D. Tenn. Aug. 29, 2012) (awarding costs to defendants for prevailing on merits of an FLSA collective action claim); *Creten–Miller v. Westlake Hardware, Inc.*, No. 08–2351–KHV, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (same).

---

[5] In support, Defendants cite to *White v. Baptist Mem'l Healthcare Corp.*, 699 F.3d 869 (6th Cir. 2012). However, in *White* the Sixth Circuit did not discuss the costs of the litigation, let alone explain how the absence of cost-sharing language in the notice affects the recovery of such costs. The district court did address costs, holding that the named plaintiff was liable for the defendants' costs in the action because "[s]he chose to put herself at risk as the named party, and she assumed the attendant risks, including the risk of paying costs." *White v. Baptist Mem'l Healthcare Corp*, No. 08-2478, 2012 WL 3776918 (W.D. Tenn. Aug. 29, 2012), at *4. But there is no indication that the district court, or the Sixth Circuit, addressed the issue of whether costs could be split among putative class members and whether lack of language in the notice could or would prevent such splitting.

Next, Plaintiff argues the addition of Defendants' suggested language is unnecessary because "numerous" courts have held that such language may chill opt-in plaintiff's participation in the collective action. (Doc. No. 55 at 8). Courts across the country are split on this issue, and there is a plethora of cases to support both parties' positions. *Compare Bath v. Red Vision Sys., Inc.*, No. 2:13-02366 SDW MCA, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014) ("Furthermore, a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted. Such statements have the potential of chilling participation in the collective action.") *with Heaps v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011) ("Being made aware of the possibility of being held liable for [the defendant's] costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff.").

In the Court's discretion, it finds that Plaintiff's notice shall be amended to inform potential opt-in plaintiffs that they may be obligated to pay costs if the lawsuit is unsuccessful. The Court believes that the inclusion of language is appropriate to give prospective plaintiffs a clear understanding of the potential risks and rewards of opting into this litigation. *See Frye*, 863 F. Supp. 2d at 705 ("An award of costs to a prevailing defendant in an FLSA case is clearly possible and is not merely theoretical." (quoting *Creten–Miller*, 2009 WL 2058734, at *4)). The Court can well imagine, at the hypothetical end of a hypothetical case, an opt-in plaintiff wishing he or she had been so advised and wondering why he or she was not. Therefore, before distributing the notice, the following sentence should be added to the end of the first paragraph under the heading "Effect of Joining this Lawsuit" (Doc. No. 17-3 at ¶ 5): **"If the lawsuit is unsuccessful, there is a possibility that you may be liable for the payment of Defendant's costs in defending the lawsuit."**

2. *Right to Obtain Counsel*

Next, Defendants argue that the notice should inform the potential opt-in plaintiffs of their right to choose their own counsel. (Doc. No. 26 at 2-3). Defendants suggest the notice contain the following language the court approved in *Fenley v. Wood Mustang Group, Inc.*, 170 F. Supp. 3d 1063, 1073 (S.D. Ohio 2016):

> You may also contact the Plaintiff's attorney . . . if you have any questions or need any assistance. You also have the right to select counsel of your own choosing. If you have any questions about the case, please contact Plaintiff's attorneys or the attorneys of your choice.

*Id*. Plaintiff argues that the addition of such notice is confusing and unnecessary because it is at odds with the purpose of the notice, which is to provide the potential opt-in plaintiffs with an opportunity to join *this* class action and not initiate a new action. (Doc. No. 55 at 9).

The Court does not agree with Defendants that potential opt-in plaintiffs should be advised of their right to hire their own counsel, because that indeed could result in the confusion Plaintiff describes. *See Ott v. Publix Super Markets, Inc.*, No. 3:12-0486, 2013 WL 1874258, at *3 (M.D. Tenn. May 3, 2013). However, the Court believes potential opt-in plaintiffs should be advised of their right to file their own lawsuit. Thus, the Court rejects Defendant's proposed language. Instead, the following language should be added to the notice: **"If you choose not to join in this lawsuit, you are free to file your own lawsuit."** *See id*. The language should be added to the end of the paragraph entitled "No Legal Effect in Not Joining this Lawsuit." (Doc. No. 17-3 at ¶ 9).

3. *Disclosure of Email Addresses and Phone Numbers*

Defendants object to providing the email addresses and phone numbers of potential putative class members to Plaintiff. The Court in its discretion orders Defendants to produce potential putative class members' email addresses, but not phone numbers, to Plaintiff. *See Evans v. Caregivers, Inc.*, No. 3:17-cv-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017)

(approving disclosure of potential opt-in plaintiff's mailing and email addresses, but declining in "the interest of privacy" to order defendants to produce potential opt-in plaintiff's telephone numbers).

As to the means of dissemination, Plaintiff requests that the notice be sent via U.S. mail and email. (Doc. No. 17 at 9-10). "[C]ourts within the Sixth Circuit have routinely approved dual notification through U.S. mail and email." *Crosby*, 348 F. Supp. 3d at 747; *see also Evans*, 2017 WL 2212977, at *7 (approving notice by U.S. mail, email, postings in employer's offices, and distribution with employees' paychecks). Thus, the Court approves dissemination of the notice through U.S. mail and email.

4. *Dissemination of Notice in Potential Opt-in Plaintiffs' Paychecks*

Defendants further argue that the notice should not be distributed with the potential putative class members' paychecks. (Doc. No. 26 at 3-4). Many courts have authorized notice to be included in current employees' pay envelopes. *See Crosby*, 384 F. Supp. 3d at 747; *Woldman v. AmeriColor, Inc.*, No. 3:18-cv-00151, 2018 WL 4384996, at *5 (M.D. Tenn. Sept. 13, 2018). Accordingly, the Court authorizes the transmission of the notice through U.S. mail, email, and the distribution of the notice in current employees' pay envelopes.

5. *Use of the term "Illegal" to Describe Defendants' Practices*

In the proposed notice, Plaintiff labels certain actions of Defendants as allegedly "illegal." (Doc. No. 17-3 at 1-2). Defendants argue that such legal conclusions should be removed from the notice. Although Defendant's position is weakened by the proposed notice's explanation that thus far only mere allegations have been stated, the Court agrees. Because the Court has not yet determined if the Defendants' pay practices are in fact illegal, this language could potentially cause confusion to potential opt-in plaintiffs who could infer that the alleged illegality has been judicially declared actual illegality. Thus, the word "illegal" shall be removed from the paragraphs entitled

"Illegal Tip Credit" (*Id*. at ¶ 2(a)); "Illegal Tip Pool" (*Id*. at ¶ 2(b)); and "Illegal Deductions and Kickbacks" (*Id*. at ¶ 2(c)).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Expedited Court Supervised Notice to the Putative Class and for Conditional Certification Pursuant to the FLSA (Doc. No. 16) will be **GRANTED**. In addition, the parties shall comply with the Court's additional orders regarding the disclosure of contact information and notice forms set forth in this Memorandum.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE